Good morning, Your Honors. If it would please the Court, I'd like to reserve three minutes for rebuttal, please. The Court has before it this morning a question of first impression, and that is whether a foreign subscriber may agree in a DMCA counter-notice to jurisdiction in a particular district, and then U.S. district, and then once sued here, immediately move for foreign nonconvenience to take the case back to its home country. Ironmace's contention that it could do this is flawed for at least four reasons. First, Ironmace's interpretation would render its consent effectively a nullity, and Congress's purpose was plainly to have the infringement litigation take place here in the United States. The Jones Act and FILA cases that we've cited recognize that when Congress uses the word jurisdiction, it does not always use it in the technical sense that lawyers and judges do in court, and it wouldn't make any sense to interpret, for reasons I'll go on to cover later, wouldn't make sense to interpret that term so narrowly because it would effectively undermine the purpose of the statute. The second flaw in Ironmace's argument is it fails to offer any purpose that the statutory consent requirement would serve if its interpretation were adopted. It's completely silent on that, and that's Congress. Can I start with that and ask a question about that?  Why wouldn't it matter if a party consented to jurisdiction? I'm not sure. It seems like you're assuming that any party that might have a copyright suit under the scenario would be subject to jurisdiction here in Washington, but it seems like if it's a foreign company, it might not be. Can you explain, like, what case you are relying on for the notion that they would definitely be subject to jurisdiction absent consent? Putting aside venue, but just jurisdiction? Yes. Personal jurisdiction? Yes. I understand Your Honor's point. It's — it's — would not — jurisdiction would — the consent to jurisdiction would sometimes be valid, but I think in the minority of cases, and that's because usually someone who's distributing content through an Internet provider based in the Maybe others as well, but also American consumers. And under this Court's decision two years ago in Will Company v. Lee, that is sufficient to best personal jurisdiction. But say they are not really targeting U.S. consumers. I mean, it could be that they have a website somewhere and they have some activity on the Web here, but not much. And so in that scenario, they might not — there might not be personal jurisdiction in Washington absent consent. And so it doesn't seem like this really is a situation where the consent would serve no purpose. Well, that would — it would be the case that there's no jurisdiction under the general statutes, Your Honor, only if the foreign subscriber were targeting people only outside the United States. And that does happen, but it's not typical. And it's hard to believe that Congress wrote this consent requirement with that scenario in mind. The far more typical scenario is a foreign subscriber that is pushing content to — but it's rare — for example, I'm aware of one situation in which a foreign company was using an Internet provider to target its customers in its own country, in its own language other than English. But I don't think that's the typical scenario that Congress would have come up with to have this very specific provision. You know, instead, the DMCA in general was intended to strengthen copyright enforcement. And so the purpose of this procedure, without a doubt, was to give U.S. rights holders more ability as a practical matter to protect their content, right? And so the — Well, maybe. I mean, it seems like the biggest purpose was to protect the Internet service providers. No. DMCA — Your Honor, the DMCA as a whole was enacted to strengthen copyright protection. It was — it was to implement a WIPO treaty. And while the counter-notice provision in particular reflects a balancing of interests, it gives a lot of protection to a rights holder. So, for example, Iron Mace has made the point that it's the smaller company of the two here, right? But that wouldn't always be the case. And so think about a small content provider in the U.S. or even abroad, like, say, a singer-songwriter who's just writing songs and performing them on YouTube, and then people in foreign countries start stealing that work, start infringing it, start copying it, start selling it, even, or using it in another work for profit. If that individual content creator in the U.S. can't bring those foreign parties into a U.S. court, they're never going to get any relief. I mean, it's hard enough for an ordinary person to come into court and deal with the expense of hiring an attorney and so on. But let's say we have this singer-songwriter and there are people infringing in the U.K., France, Uganda, China. And all of these people, so the content creator here issues a counter-notice, right? So the service takes it down. And then all of these foreign parties file a counter-notice and agree to jurisdiction in the U.S. district where the service provider can be located. And just like Iron Mace, they're all able to invoke foreign nonconvenience to take the case back to their foreign country. That individual content creator would never, as a practical matter, be able to go after those people. So I think it's most reasonable to assume Congress wanted to protect people who have copyrights. Well, in that hypothetical, maybe the foreign nonconvenience motions would just fail. Like, you're trying to have them not even get filed at all. But maybe in that situation, the content creator could argue, well, the most convenient forum is here, the one that makes sense, the one in the public interest, and just win the motion. But you're trying to have the motion not even be considered. So I'm not quite sure why we get past the idea that that motion would be considered in your hypothetical. Well, for example, I think there's two different issues, right, what this statute means versus how the foreign nonconvenience ruling would come out. But in the Zipfell case, the Court very sharply distinguished those because, right, it granted or it affirmed the grant of a foreign nonconvenience motion as to the foreign plaintiffs, but as to the U.S. plaintiff or the person suing on behalf of the deceased person who was a U.S. party, the Court said, listen, we might well grant foreign nonconvenience as to the U.S. plaintiff as well, but we have to consider whether the Jones Act bars that. So I think the fact that a foreign nonconvenience may or may not in certain situations succeed isn't really the point, because the point is whether, like the Jones Act or the FILA, this statute prohibits foreign nonconvenience because the Congress just wanted the litigation to be decided in the United States. So can I ask about that, too? So I think when you started this hypo about the singer-songwriter, you acknowledged that often, or at least in this case, you might have big companies on both sides of a copyright case. That's not the situation with the Jones Act, where you have an injured employee and presumably a big employer that they're trying to sue. And so the statute, the interpretation of the statute was to favor letting the employee have an easy time. But with copyright, why would we assume that's true, where there might be big parties on either side? Well, because I think you have to think about protecting the smaller content holders. And the statute doesn't distinguish between big and small. I mean, I guess you're yes. But on that point, I think it's clear to Judge Freeland's question that in the Jones Act and in FILA, Congress was specifically concerned with giving the plaintiff, you know, a convenient form. But Section 512 doesn't indicate, and I don't see where, and maybe you can point me to where, it suggests that Congress had the similar concern in Section 512 as they did in FILA and in the Jones Act. Well, unlike some of those cases, there's no legislative history here. We have only the statutory text. But we know that the statutory text had to have some significant impact on copyright enforcement, and it really only does that if it rules out form nonconvenience. So we have to look to the text to determine the purpose. So in your view, the same presumption that we have because of the legislative history in the Jones Act and FILA should automatically apply, even though you can't point to any legislative history, and the text is silent on this issue of giving the plaintiff the convenient form. The text, I mean, respectfully, the text is not silent in the sense that it requires a foreign subscriber to give this consent. The question is what the Congress was intending to accomplish by doing that. Well, but then go back to her question, though. Her question is point us to the language that you suggest, you know, for your particular position. It's the language that requires in the counternotice that the party issuing that counternotice agree to jurisdiction in a district where the service provider may be located. And it says jurisdiction, not venue. That's correct. But the courts have recognized, including this Court in Zipfel, that sometimes the court, the Congress doesn't speak precisely and uses jurisdiction in a more common-sense way to mean the place where the case should be resolved. Because of the legislative history in that situation. Well, and also the similarity to Fela. But I think the point remains the same, that the statute said jurisdiction, and the court interpreted it to mean venue. So the courts, that recognizes that the Congress does not always use these terms in the precise way that lawyers and judges would. And with that... We've taken your time, but I'll still give you two minutes for rebuttal. Thank you, Your Honors. I appreciate it.  Good morning, and may it please the Court. My name is Josh Geller from the law firm of Greenberg Glusker, on behalf of the defendants and appellees. Next on, Iron Mace's consent to jurisdiction under the DMCA counter-notification provision did not divest the district court of its inherent authority to consider the doctrine of forum nonconvenience, and to dismiss this action where there was an adequate alternative forum, where the parties were already litigating this dispute, and which they had bargained for in a contractual forum selection clause. And Nexon's argument, admittedly by Nexon, asked the court to create brand-new law that Iron Mace's submission of the DMCA counter-notification, after this case was filed, immediately stripped the district court of its discretionary authority to consider forum nonconvenience. But let me ask you this. Your friend on the other side makes the argument that sometimes Congress says jurisdiction, but means venue. So why isn't that the case here? Right. So there's one example of that. So it's the Jones Act, and it traces back to the 1920 Jones Act and to a Supreme Court holding in 1924 that said, okay, this was inaptly worded, and we think Congress meant venue here. Now, that case is very different for a few reasons. First and foremost, it's not just the passage of time, but it's the intervening change in the law and the change in the way we think about venue. This is before the general venue statute. This is before 1391. It's before 1404, where Congress codified forum nonconvenience, at least for transfers among district courts. So to think that a drafting error that a Congress made more than 100 years ago before we had any of our modern venue jurisprudence, where they say jurisdiction and the Supreme Court thought at the time they probably meant venue, can be transferred over to what a Congress legislated in terms of the Digital Millennium Copyright Act, which from its very name reflects the fact that we're talking about a substantial passage of time. Particularly when you have, for example, the creative technology case of the Ninth Circuit, which was just a year before, and which found that forum nonconvenience is available in copyright infringement actions. So to think that Congress, just a year later, passes something that's directly on point in terms of its affecting copyright law would intend a departure from that when the text of the statute doesn't say that, doesn't use the word venue, doesn't say forum nonconvenience, doesn't talk about the district where an action may be brought. To think that Congress intended that where the statute doesn't say that, and Nexon acknowledges there's absolutely nothing in the legislative history to prove that, I think it's taking that one outlier example and putting far, far too much weight on it. And their entire argument hinges on that because unless we get past that first point and accept Nexon's argument that jurisdiction here meant venue, nothing that comes after it, none of the argument as far as why a venue provision may preclude the exercise of forum nonconvenience is even relevant. But even if we accepted Nexon's argument and said, all right, let's call it a venue, that still doesn't address the fact that in 99% of cases in every federal statute other than the combined regime of FILA and the Jones Act, courts, including this court, have said, no, no, no, you can have a federal statute that creates a new remedy, that designates a particular venue, that gives exclusive jurisdiction to a federal court, and still we consider forum nonconvenience. And the reason for that... But do you agree that this is an issue of first impression for our court? I think yes and no. It would be creating new law to adopt Nexon's position. I don't think it's an issue of first impression because I think creative technology just controls in that that is a forum nonconvenience case under the Copyright Act. There's nothing in the text of this statute that even speaks to that issue. So that's it. We can just point to that and say, hey, that says we're allowed to do that here. That's the end of the inquiry. And I think it's important to bear in mind that forum nonconvenience as a doctrine is not just about the convenience of a litigant. It's not just about protecting Iron Mace from being hauled into a court that's inconvenient, that Nexon has, you know, when Nexon had selected a different court in its forum selection clause. It's about the district court, federal court's inherent right and power to resist imposition upon its jurisdiction, even when a statute provides for jurisdiction and venue. Isn't it kind of odd that Iron Mace consented to jurisdiction in the Western District of Washington and then turned around immediately and said, oh, never mind? Well, no, I don't think so. And that's because Iron Mace has the right to submit a counter notification under the DMCA. That's kind of beside the point of this. But the point is, isn't it frustrating sort of the expectation that Nexon had with regards to the relationship between the parties? No, I don't think so. So two things, I don't think there's any expectation because it's not like a bilateral kind of agreement between Nexon and Iron Mace. It's just between Iron Mace submitting something to the service provider. So Nexon doesn't really factor in. But second, and this goes to the point I think all of you were making, that the actual question when you get to forum nonconvenience, it starts with the question of is there an adequate alternative forum? So if there's some concern about gamesmanship, that someone is playing fast and loose, and the example counsel used talking about infringers in China, that's a classic example where I think there's ample case law that says China may not be an adequate alternative forum. There may be no remedy there. Maybe we don't trust the judiciary of certain other countries. And so I don't think there's anything inherently wrong about a company like Iron Mace submitting the counter notification, consenting to jurisdiction, where I think our jurisdiction probably wouldn't have been proper absent that, where there may have been a personal jurisdiction argument, but Iron Mace made the choice, no, we'll consent to jurisdiction, and we'll let the court consider the forum nonconvenience argument. And, of course, forum nonconvenience can only be considered by a court after jurisdiction and venue are proper. Those are antecedent requirements. So I think it perfectly comports with the statute's purpose for a company like Iron Mace to say, no, we'll consent, let's go to this court, we'll show up, and let's have our argument about whether there's a better forum. So I know your primary argument is this consent is just about jurisdiction, but you also have argued even if it's also a consent to venue. So I'd like to just ask about that. If it were a consent to venue, can you point to any circuit or higher case, not just district court cases, that say you can consent to venue and immediately seek a different venue? Yes. So, well, I think in general, all of the cases that find that a venue provision in a Federal statute does not preclude exercise of forum nonconvenience or consideration of forum nonconvenience work just as well if it's a venue consent. But I think, actually, the best case is Gulf Oil v. Gilbert, which is the Supreme Court case. And, actually, I have a quote because I like it. It's, the defendant's consent to be sued extends only to give the court jurisdiction of the person. It assumes that the court, having the parties before it, will apply all the applicable law, including in those cases where it is appropriate, its discretionary judgment as to whether the suit should be entertained. And that was a forum nonconvenience case. And that was the Supreme Court saying, even though we have a venue statute, even though venue is proper, and even though there was a consent to jurisdiction, nonetheless, we're going to say, no, the court has, of course, a discretionary right to consider forum nonconvenience, which, again, is not just about the convenience of the litigants. This, the district court here looked at this and said, this case has no connection to the Western District of Washington. This would be a complex litigation between exclusively Korean parties where all of the testimony is going to be in Korean, all of the evidence and the witnesses are there, and we're going to have a multi-week long trial with, you know, taxpayers in this district showing up and listening to a very complex case where every piece of testimony is going to be translated. It's such a burden on the court. We're going to decline to exercise jurisdiction. So, in Gulf Oil, I have to admit I don't remember the exact words of that passage, but I think it's a consent to jurisdiction, not a consent to venue. So I'm just wondering, can you consent to venue and immediately turn around and say I want a different venue? I'm just not sure I've ever seen a case like that.   I'm not sure, and I think it's a tough hypothetical because nobody needs to consent to venue, because you have the general venue statute, 1391. So venue is always proper against a foreign defendant in every district. So I'm having trouble thinking of a circumstance in which consent to venue would even come up, just because there is no defense of improper venue. So I think I would just have to look to all of the cases where venue is admittedly proper, where a Federal statute places venue in a Federal court. So that's why. So is that a further argument for why this really should just be considered a consent to jurisdiction, that it doesn't really work that way? Yeah. Yeah, exactly. That it just doesn't make sense, given, I mean, any number of reasons. But given that we have a general venue statute, why would Congress have been thinking about venue at all, let alone thinking about this as an exclusive venue that is stripping the district court of a discretionary right the district courts have had for, you know, a hundred years? So I think I'll just conclude by saying that this would be not only just making new law, but this would place the DMCA, which doesn't talk about venue, as the outlier to every other Federal statute, whether it's the Lanham Act, Copyright Act, RICO, you know, that has a specific venue provision that Federal courts uniformly say does not bar the consideration of forum nonconvenience. And we would be picking up on a drafting error that Congress made a hundred years ago in the Jones Act, which is such a sui generis act about Federal employees in cross-border disputes that where we, you know, Congress was very explicit in the legislative history that we care a lot about venue, we're thinking about it really closely. To put the DMCA in that bucket, as opposed to the bucket of 99% of Federal statutes, I don't think is a position this court should adopt. Thank you. Well, I think I can agree with my friend on one thing, that with the different terminology, this statute is unique. So, you can spin that as being an outlier, but it is a unique statute, right? And this notice counter notice procedure is very unusual. And one of the things that came to mind when I was listening to opposing counsel's argument was, remember that this statute requires the foreign party to agree to a district where the service provider is located. And not a form that is convenient to the infringer. So, here again, Iron Mace doesn't really have a strong point as to what the purpose of these provisions would be. We think Congress set up that system so that the case would be venued in a location where if the rights holder needed to or wanted to, the service provider could be added to the case. Again, if you allow form nonconvenience to negate that, the purpose of the statute is undermined. Well, again, that might just be a reason why the motion to go to a different forum would fail, though. It doesn't necessarily mean you can't consider it. It just is a reason. I mean, if you need the Internet service provider and that's the only venue that would work, that's a reason to deny the motion to transfer somewhere else. It could be. But I think still it has to be a stronger rule to serve Congress's purpose because it's hard to understand why Congress would agree, force a party issuing a counter notice to agree only to jurisdiction and understanding that the form nonconvenience can boomerang the case back to the foreign venue. But it's talking about the parties, right? Your argument is that the parties are agreeing to that, but that doesn't strip away the court from considering a motion for form nonconvenience, though. Well, I think, well, if the statute rules out form nonconvenience, then, of course, that is the result. But it doesn't say that. It doesn't say it explicitly. It says it impliedly. And to figure out the purpose of the statute, you have to look to the purpose of the  Now, Congress didn't give us express legislative history, but that doesn't mean that this statute isn't like other statutes that the courts have recognized rules out form nonconvenience. Are you trying to litigate in Korea and in Washington? Iron Mace commenced the litigation in Korea, yes. And it's only, the record shows it's only addressing Korean law, not U.S. law. Sorry, I guess, so I thought both parties sued in Korea. Is that not right? Well, we responded, yes. Nixon responded, but Iron Mace It wasn't both suits suing each other? Iron Mace commenced the actions, and then Nixon brought actions as well. And so what is the answer? Do you want to be litigating in both places? Well, right now, my client has no option but to litigate in Korea. They want to litigate in the United States, and so that's why we're here. Right. I guess it's just a question of curiosity, but are you trying to have two litigations, one in each place, or if you succeed in getting to Washington, will you somehow be able to stop litigating in Korea? That's to be determined depending on what the district judge in this case does and the Korean judges do in the Korean case. So I think the trial lawyers would have to sort that out. I think we have no further questions. Thank you, both sides, for the helpful arguments. Thank you very much. This case is submitted.
judges: FRIEDLAND, MENDOZA, DESAI